UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ADRIENNE HUNT,

                        Plaintiff,

   -against-                                          6:06-CV-99
                                                                (LEK/DEP)
MICHAEL J. ASTRUE,[1] Commissioner of Social
Security Administration,

                        Defendant.
_____

## DECISION AND ORDER

**I.    BACKGROUND**

    **A.    Procedural History**

Plaintiff Adrienne Hunt ("Plaintiff") filed an application for Supplemental Security Income ("SSI") on January 14, 2004. Administrative Transcript ("AT") 42-45. The application was denied initially. AT 35. A request was made for a hearing. AT 39. A hearing was held before an Administrative Law Judge ("ALJ") on April 28, 2005. AT 389-422. In a decision dated May 26, 2005, the ALJ found that Plaintiff is not disabled. AT 15-28. The Appeals Council denied Plaintiff's request for review on December 20, 2005. AT 5-10. Plaintiff commenced this action on January 25, 2006 pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner's final decision. Dkt. No. 1.

    **B.    Contentions**

Plaintiff makes the following claims:

(1) The Secretary committed an error of law in determining that Plaintiff's mental impairments did not equal the impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, Part

---

[1] Michael J. Astrue became Commissioner of Social Security on February 12, 2007. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue is substituted as the Defendant in this suit.

A § 12.04 and Part B § 112.04.  Dkt. No. 9 at 6-13.

(2)  The Secretary's decision is not supported by substantial evidence.  Dkt. No. 9 at 13-15.

(3)  The Secretary improperly evaluated and considered the limitations imposed by Plaintiff's mental impairments.  Dkt. No. 9 at 16-18.

Defendant argues that the Commissioner's determination is supported by substantial evidence in the record, and must be affirmed.  Dkt. No. 10.

**C.     Facts**

Plaintiff was forty-five years old at the time of the hearing.  AT 56, 392.  Plaintiff completed the tenth grade.  AT 394.  Plaintiff's past work experience includes working as a textile laborer and a rental car attendant.  AT 60, 394.  Plaintiff alleges that she became unable to work on September 5, 1998.  AT 47.  Allegedly, while working as a textile worker that day, Plaintiff slipped and fell, injuring her lower back.  AT 175, 394.  Plaintiff previously injured her neck and hands in 1995.  AT 175.  She alleges disability due to carpal tunnel syndrome, depression, cervical-lumbar sprain, asthma, herniated discs, arthritis in her neck, and hepatitis C.  AT 46.

**1.     Physical Condition**

**a.     Slocum-Dickson Medical Group**

From November 30, 1999 to January 16, 2004, Plaintiff was treated at Slocum-Dickson Medical Group.  AT 107-54.  During this time, Plaintiff was diagnosed as suffering from, *inter alia*, seropositive rheumatoid arthritis, low back pain, knee sprain, and hepatitis C.  See id.  She was prescribed various medications.  Id.

**b.     Jose Lopez, M.D.**

On August 27, 2001, Plaintiff was examined by Jose Lopez, M.D. for purposes of Plaintiff's workers' compensation claim.  AT 185-86.  Dr. Lopez noted that he previously evaluated Plaintiff

on October 23, 2000.  AT 185.  After an examination, Dr. Lopez concluded that Plaintiff had no disability related to her work-place injury of September 5, 1998.  AT 186.

### c. Nameer Haider, M.D.

From June 5, 2002 to February 3, 2003, Plaintiff saw Nameer Haider, M.D. for pain management.  AT 80-88, 181-84.  An EMG showed moderate chronic peripheral neuropathy and mild acute right lumbar radiculitis.  AT 84.  Dr. Haider diagnosed Plaintiff as suffering from chronic low back pain and chronic neck pain.  AT 82-88.  Plaintiff was prescribed Ultracet, Neurontin, and Vioxx.  AT 82, 84, 88.  On February 3, 2003, Dr. Haider discontinued care of Plaintiff because Plaintiff "was [not] interested in any interventional management of her back and was only looking for pain medications."  AT 80.

### d. St. Elizabeth Family Medicine Center

On December 6, 2002, Plaintiff complained of upper back pain to Oleg Dulkin, M.D. of St. Elizabeth Family Medicine Center.  AT 179-80.  Dr. Dulkin reported that Plaintiff refused to answer any questions and left the office.  Id.

Plaintiff returned to the office and was seen by Kevin Mathews, M.D.  AT 177-78.  On examination, Plaintiff was limited by pain from performing a full straight leg raise and knee flexes.  AT 177.  Dr. Mathews diagnosed Plaintiff as suffering from pain in her low back, cervical spine, and left shoulder.  Id.  Dr. Mathews noted that Plaintiff "was extremely difficult.  She was angry, disrespectful and extremely vague in her answers . . . .  I suggested that Ms. Hunt consider having her [p]rimary [c]are at another office because I do not believe that we can really establish a successful therapeutic relationship."  AT 178.

### e. Diane Cavallaro, M.D.

From December 23, 2002 to January 4, 2005, Plaintiff received treatment from Diane

3

Cavallaro, M.D.  AT 207-42, 287-320.  Dr. Cavallaro treated Plaintiff for her back pain, neck pain, and asthma, hepatitis C, and leg edema.  Id.  She prescribed various medications.  Id.

In a functional assessment completed on March 11, 2004, Dr. Cavallaro indicated that Plaintiff is able to stand and/or walk up to two hours per day; sit up to six hours per day; and was limited in her abilities to push and/or pull.  AT 215.

### f. John Toukatly, D.C.

From February 25, 2003 to August 29, 2005, Plaintiff treated with John Toukatly, D.C.  AT 175-76, 267-76, 349-54, 358-76, 379-82.  Dr. Toukatly treated Plaintiff's low back and neck.  AT 267.  An MRI of Plaintiff's lumbar spine performed on November 1, 2004 showed degenerative changes at L3, L4, and L5 and mild disc bulges at L3 and L4.  AT 275-76.

On August 29, 2005, Dr. Toukatly indicated that Plaintiff's diagnoses included cervical strain, lumbar strain, right leg sciatica, and herniated disc at L5-S1.  AT 349.  Dr. Toukatly treated Plaintiff through a variety of methods, including ultrasound, hot packs, electrical muscle stimulation, and manipulation of the neck and lower back.  Id.  He indicated that Plaintiff's response to treatment was fair.  Id.  However, he stated that Plaintiff's prognosis is poor because Plaintiff remains with neck, lower back, and right leg pain.  Id.

In a Medical Source Statement, Dr. Toukatly indicated that Plaintiff is able to lift and/or carry a maximum of less than ten pounds on an occasional basis and on a frequent basis; stand and/or walk less than two hours in an eight-hour workday; sit less than about six hours in an eight-hour workday; must periodically alternate sitting and standing; and is limited in her abilities to push and/or pull.  AT 350-51.

### g. Emergency Room - St. Elizabeth Medical Center

On July 23, 2003, Plaintiff presented to the emergency room of St. Elizabeth Medical

Center. AT 93-101. Plaintiff was diagnosed as suffering from atypical chest pain. AT 95. A chest x-ray showed no acute disease. AT 96.

### h. Gregory Shankman, M.D.

From September 29, 2003 to August 30, 2005, Plaintiff was treated by Gregory Shankman, M.D. AT 173-74, 329-48. Dr. Shankman diagnosed Plaintiff as suffering from degenerative disc disease, cervical sprain, and carpal tunnel syndrome. AT 333. Dr. Shankman prescribed various medications and administered pain-relieving injections. See AT 333, 337.

On August 30, 2005, Dr. Shankman completed a Medical Source Statement in which he indicated that Plaintiff is able to lift and/or carry a maximum of ten pounds on an occasional basis and frequent basis. AT 330. He also indicated that Plaintiff is able to stand and/or walk a total of two to four hours in an eight-hour workday. Id. Dr. Shankman indicated that a hand-held assistive device is not necessary for ambulation. Id. He also indicated that Plaintiff is able to sit less than about six hours in an eight-hour workday, and must periodically alternate sitting and standing. AT 331. He further indicated that Plaintiff's abilities to push and/or pull using her lower extremities are affected by her impairment. Id.

### i. Emergency Room - Faxton-St. Luke's Healthcare

On October 26, 2003, Plaintiff presented to the Emergency Room at Faxton-St. Luke's Healthcare with complaints of left knee pain, which occurred after she fell while running. AT 102. An x-ray of Plaintiff's left knee showed no fracture or dislocation. AT 104. Mild arthritic changes were noted. Id. Plaintiff was diagnosed as suffering from a left knee sprain. Id.

On September 7, 2005, Plaintiff returned for treatment of a headache, chronic back pain, and radiculopathy. AT 383. Plaintiff was prescribed Flexeril. AT 385.

### j. Kalyani Ganesh, M.D.

On April 15, 2004, Plaintiff underwent an internal medicine examination by Kalyani Ganesh, M.D.  AT 194-201.  Dr. Ganesh noted that Plaintiff was using a cane, but opined that it was unnecessary.  AT 195.  Dr. Ganesh diagnosed Plaintiff as suffering from chronic neck and low back pain; degenerative disc disease in the neck; hepatitis C; status post bilateral carpal tunnel release surgery; and asthma.  AT 197.  Dr. Ganesh opined that Plaintiff has no gross limitations to sitting, standing, walking, climbing, or bending, but has "mild limitation[s]" to lifting, carrying, pushing, and pulling.  Id.

### k. St. Elizabeth Medical Group

On May 6, 2005, Plaintiff saw Jill MacDonald, N.P.  AT 327-28.  Nurse MacDonald noted that Plaintiff was "changing her primary care physician to Dr. [Julie] Betro-Shkane."  AT 327.  Plaintiff complained of abdominal pain and was diagnosed as suffering from right lower quadrant pain.  Id.

On June 13, 2005 and August 16, 2005, Plaintiff saw Julie Betro-Shkane, D.O.  AT 324-25.  Dr. Betro-Shkane diagnosed Plaintiff as suffering from, *inter alia*, anxiety, abdominal pain, and asthma.  Id.

### 2. Mental Condition

### a. Firooz Tabrizi, M.D.

From September 11, 2001 to March 18, 2004, Plaintiff saw Firooz Tabrizi, M.D.  AT 187-88, 369-71, 377-78.  Plaintiff complained of low energy, poor sleep, nervousness, and tension.  Id.  Dr. Tabrizi diagnosed Plaintiff as suffering from mood disorder and major depression.  AT 188.  Dr. Tabrizi recommended that Plaintiff receive individual psychotherapy and drug therapy.  Id.

On September 4, 2003, Dr. Tabrizi completed an Employability Assessment.  AT 369-71.  Dr. Tabrizi diagnosed Plaintiff as suffering from a mood disorder and major depression.  AT 369-

70. Dr. Tabrizi indicated that Plaintiff is very limited in her abilities to understand and remember instructions; carry out instructions; maintain attention/concentration; make simple decisions; interact appropriately with others; maintain socially appropriate behavior without exhibiting behavior extremes; maintain basic standards of personal hygiene and grooming; and appear able to function in a work setting at a consistent pace. Id. Dr. Tabrizi opined that Plaintiff is unable to work. AT 371.

On August 12, 2004, Dr. Tabrizi completed a mental impairment questionnaire. AT 277-82. Dr. Tabrizi assigned Plaintiff a score of fifty on the Global Assessment of Functioning ("GAF") scale.[2] AT 277. Dr. Tabrizi indicated that Plaintiff would have difficulty working at a regular job on a sustained basis. AT 279. He indicated that Plaintiff has a moderate degree of limitation in the domain of "restrictions of activities of daily living;" a marked degree of limitation in the domain of "difficulties in maintaining social functioning;" frequent deficiencies in the domain of "concentration, persistence or pace;" and three or more episodes of deterioration or decompensation. AT 280. In a second questionnaire, Dr. Tabrizi indicated that Plaintiff was seriously limited in numerous mental abilities. AT 281-82.

      **b.**     **Kristen Barry, Ph. D.**

On April 15, 2004, Plaintiff underwent psychiatric and intelligence examinations by Kristen Barry, Ph.D. at the request of the agency. AT 189-93, 202-06. Dr. Barry noted that during the examination, Plaintiff was "rather evasive and resistant." AT 190. Dr. Barry also noted that Plaintiff stated that she has auditory hallucinations, "but it appeared as if she was somewhat putting on an act." AT 191. Dr. Barry diagnosed Plaintiff as suffering from depressive disorder not

---

[2] A GAF score between forty-one and fifty indicates the presence of serious symptoms or a serious impairment in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders 34 (American Psychiatric Association, 4th Ed. Text Revision 2000).

otherwise specified and personality disorder not otherwise specified, and noted that borderline intellectual functioning should be ruled out. AT 192. Dr. Barry concluded that Plaintiff is able to follow and understand simple directions and instructions, but noted that Plaintiff has some learning delays and may possibly be functioning in the borderline range intellectually. Id. Dr. Barry also noted that Plaintiff appears to have difficulty relating adequately with others and with handling stressors, and that Plaintiff "appeared at times to be somewhat malingering throughout the evaluation." Id.

### c. Abdul Hameed, M.D.

The record contains a Mental RFC Assessment form completed by Abdul Hameed, M.D., a State agency review physician, on June 25, 2004. AT 249-51. Dr. Hameed indicated that Plaintiff is limited moderately in the following abilities: carry out detailed instructions; maintain attention and concentration for extended periods; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. AT 249-50.

In a Psychiatric Review Technique form, Dr. Hameed indicated that Plaintiff has no limitation in the domain of "activities of daily living;" a mild limitation in the domain of "difficulties in maintaining social functioning;" a moderate limitation in the domain of "difficulties in maintaining concentration, persistence, or pace;" and no repeated episodes of deterioration. AT 263.

### d. Community Health and Behavioral Services

The record contains a letter to Plaintiff from Rosario Bellassai, M.S.W., a therapist at Community Health and Behavioral Services, dated December 6, 2004. AT 283. Ms. Bellassai stated that the "next session" with Plaintiff was scheduled for December 14, 2004. Id. Ms. Bellassai also stated that an appointment for a psychiatric evaluation with Sylvia Adel Coleby, a

nurse practitioner, had been scheduled.  Id.

The record also contains a January 21, 2005 prescription slip from Nurse Coleby.  AT 286.  Plaintiff was to undergo various laboratory tests.  Id.

The record further contains an Employability Assessment completed by Dr. Kamath, a psychiatrist at Community Health Behavioral Services.   AT 355-56.  Dr. Kamath stated that Plaintiff suffers from "chronic mental health symptoms," such as auditory hallucinations, commands, and paranoia.  AT 356.  Dr. Kamath diagnosed Plaintiff as suffering from schizoaffective disorder and post-traumatic stress disorder, and that a cocaine-induced disorder with delusion should be ruled out.  AT 355.  Dr. Kamath indicated that Plaintiff is limited moderately in her abilities to understand and remember instructions, carry out instructions, and maintain attention/concentration.  AT 355.  He also indicated that Plaintiff is very limited in her abilities to interact appropriately with others, maintain socially appropriate behavior without exhibiting behavioral extremes, and appear able to function in a work setting at a consistent pace.  Id.

### e.    Behrooz Ebrahimi-Fard, M.D.

The record contains copies of two prescription slips dated February 9, 2005 signed by Behrooz Ebrahimi-Fard, M.D. of Faxton-St. Luke's Healthcare.  AT 284-85.  Plaintiff was prescribed Zoloft and Vistaril.  Id.

## II.    DISCUSSION

### A.    Disability Standard

To be considered disabled, a plaintiff seeking DIB or SSI benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. Berry, 675 F.2d at 467 (citations omitted).

In this case, the ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. AT 20. At the second step, the ALJ determined that Plaintiff's lumbar and cervical disc disease, asthma, and depression are severe impairments. Id. At the third step, the ALJ concluded that those impairments neither met nor equaled any impairment listed in

Appendix 1 of the regulations. AT 20-23. At the fourth step, the ALJ found that Plaintiff retains the RFC to perform sedentary work and therefore found that Plaintiff is unable to perform her past relevant work. AT 23-26. At the fifth step, the ALJ consulted the Medical-Vocational Guidelines and concluded that Plaintiff is capable of performing work that exists in significant numbers in the national economy. AT 26-27. The ALJ therefore concluded that Plaintiff was not disabled. Id.

### B.      Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing, *inter alia*, Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. Johnson, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams on behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams, 859 F.2d at 258 (citations omitted).  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972); see also Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), cert. denied, 459 U.S. 1212 (1983).

### C.    Listed Impairments

Pursuant to the third step of the five-step process, if the claimant has an "impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  In cases in which the disability claim is premised upon one or more listed impairments of appendix 1, "the Secretary should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment."  Berry, 675 F.2d at 469.

Plaintiff claims that the ALJ erred by failing to find that her impairments met or equaled Listing 12.04.[3]  Dkt. No. 9 at 7-8.

Listing 12.04 (Affective Disorders) provides as follows:

12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in

---

[3] Plaintiff also asserts that the ALJ erred by failing to find that her condition met or equaled 20 C.F.R. Part 404, Subpart P, Appendix 1, Part B § 112.04 (Mood Disorders).  Dkt. No. 9 at 7.  However, this Listing is applied only in the evaluation of impairments of children under age eighteen.  See 20 C.F.R. Part 404, Subpart P, Appendix 1, Part B.

both A and B are satisfied, or when the requirements in C are satisfied.

20 CFR Pt. 404 Subpt. P App. 1 § 12.05.

The ALJ in this case found that Plaintiff's psychological impairment may meet "some" of the criteria of section (A). AT 21. However the ALJ found that the criteria of sections (B) and (C) were unmet. AT 21-23. The ALJ assigned "great weight" to the opinion of the non-examining State agency physician, Dr. Hameed, and "little weight" to the opinion of Plaintiff's treating psychiatrist, Dr. Tabrizi. AT 21-22. The ALJ then reviewed the four areas of functioning of the "B" criteria. AT 22. For the following reasons, the Court finds that the ALJ's determination is not supported by substantial evidence.

### 1. Evaluation of Opinion Evidence

#### a. Dr. Hameed

The ALJ assigned "great weight to the opinion of the State agency psychological consultant [(Dr. Hameed)] (Exhibit 13F)." AT 21. The ALJ noted that the findings of fact made by State agency medical and psychological consultants, regarding the nature and severity of an individual's impairments, are treated as expert opinion evidence. AT 21. Indeed, the regulations provide that State agency physicians are "highly qualified physicians . . . who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(f)(2)(i); 416.927(f)(2)(i); SSR 96-6p, 1996 WL 362203, at *2 (S.S.A.). The ALJ also noted that while Dr. Hameed did not examine Plaintiff, he "provided specific reasons for his opinions about the claimant's limitations showing that they were well grounded in the evidence of record." AT 21-22. However, a review of Exhibit 13F, the Psychiatric Review Technique form, shows that Dr. Hameed provided no supporting reasons. AT

13

253-66. Dr. Hameed simply checked boxes to indicate the degree of Plaintiff's limitations.[4]  Id. Therefore the Court is unable to conclude that the ALJ properly assigned great weight to this opinion.

### b. Dr. Tabrizi

The ALJ assigned "little weight" to Dr. Tabrizi's opinion even though Dr. Tabrizi is a treating source.  AT 22.  The medical opinions of a treating physician are given "controlling weight" as long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with other substantial evidence contained in the record.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Even if the treating physician's opinion is contradicted by substantial evidence and thus is not controlling, it still may be entitled to significant weight "because 'the treating source is inherently more familiar with a claimant's medical condition than are other sources.'"  Santiago v. Barnhart, 441 F. Supp. 2d 620, 627 (S.D.N.Y. 2006) (quoting Gonzalez v. Callahan, No. 94 Civ. 8747, 1997 WL 279870, at *11 (S.D.N.Y. May 23, 1997) (citing Schisler v. Bowen, 851 F.2d 43, 47 (2d Cir. 1988))).  However, if not controlling, the proper weight given to a treating physician's opinion depends upon the following factors: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

In assigning little weight to this opinion, the ALJ stated that Dr. Tabrizi's opinion was unsupported.  AT 22.  However, Dr. Tabrizi cited Plaintiff's diagnoses, GAF scores, and other

---

[4] Defendant argues that Dr. Hameed referred to Dr. Barry's findings.  Dkt. No. 10 at 15. Dr. Hameed referred to Dr. Barry's findings in the Mental RFC Assessment (Exhibit 12F).  AT 251.  Dr. Hameed made no reference to these findings in the Psychiatric Review Technique form (Exhibit 13F).

findings. See AT 277-78. For instance, Dr. Tabrizi diagnosed Plaintiff as suffering from Mood Disorder and Major Depression. AT 277. Dr. Tabrizi also indicated that Plaintiff's GAF score is fifty and that her highest GAF score in the past year was a fifty-five. AT 277. Dr. Tabrizi further identified his clinical findings, which he stated were Plaintiff's symptoms of sleep disturbance, mood disturbance, emotional lability, recurrent panic attacks, feelings of guilt or/worthlessness, difficulty thinking or concentrating, decreased energy, generalized persistent anxiety, hostility and irritability, and poor sleep. AT 277-78. Thus, Dr. Tabrizi provided support for his opinion.

The ALJ also stated that Dr. Tabrizi's opinion was inconsistent with the opinion of Plaintiff's primary care physician, Dr. Cavallaro. AT 22. Dr. Cavallaro indicated that Plaintiff has no limitations in the follow work-related mental activities: understanding and memory; sustained concentration and persistence; social interaction; and adaption. AT 215-16. While the two sources conflict, the ALJ failed to consider the physicians' specialties. The regulations provide that generally more weight is given to the opinion of a specialist about medical issues related to his area of specialty than to the opinion of a source who is not a specialist. 20 C.F.R. § 404.1527(d)(5). As noted, Dr. Tabrizi is a psychiatrist while Dr. Cavallaro is a primary care physician. The ALJ failed to discuss this distinction. In light of these factors, the ALJ's assignment of little weight to Dr. Tabrizi's opinion is not supported by substantial evidence.

### c.     Dr. Kamath

Plaintiff also argues that the ALJ erred by failing to assign controlling weight to the opinion of Dr. Kamath. Dkt. No. 9 at 15. Defendant argues that the record fails to clearly establish that Dr. Kamath is a treating physician. Dkt. No. 10 at 19.

The ALJ presiding over the hearing concerning the denial of benefits under the Act is obligated to take measures reasonably calculated to develop a full and complete record in order to

ensure a just determination in the matter.  Tejada v. Apfel, 167 F.3d 770, 774-75 (2d Cir. 1999) (citations omitted); see also 20 C.F.R. § 404.1512(d).  That duty can require, under appropriate circumstances, the issuance of subpoenas or the taking of other action necessary, as deemed appropriate, to fully develop the record.  42 U.S.C. § 405(d).  This requirement applies regardless of whether the plaintiff is proceeding *pro se*, or is represented by counsel.  Tejada, 167 F.3d at 774-75.

The record is unclear whether Dr. Kamath is a treating source.  Defendant points out that Dr. Kamath indicated in the March 3, 2005 Employability Assessment that Plaintiff was not a patient. Dkt. No. 10 at 19.  However, Plaintiff testified at the hearing on April 28, 2005 that she had seen Dr. Kamath on three occasions since February of 2005.  AT 404.  It is possible that Plaintiff's visits occurred after Dr. Kamath completed the form; however the record fails to clearly provide this information.  Accordingly, the matter must be remanded for development of the record regarding Dr. Kamath in order to determine if a treating relationship was established.[5]

### d.     Dr. Barry

Plaintiff argues that the ALJ improperly evaluated the opinion rendered by the consultative examiner, Dr. Barry.  Dkt. No. 9 at 9.

The regulations provide that medical opinions will always be considered.  20 C.F.R. §§ 404.1527(b), 416.927(b). Moreover, "[i]f any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, *we will weigh*

---

[5] Defendant argues that "even assuming Dr. Kamath's limitations in this report rendered [P]laintiff unemployable, this determination was not binding on the Commissioner inasmuch as it was based on the rules of the State of New York and not on the Act."  Dkt. No. 10 at 19.  For support, Defendant cites to 20 C.F.R. § 416.904, which provides, "A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind.  We must make a disability or blindness determination based on social security law.  Therefore, a determination made by another agency that you are disabled or blind is not binding on us." Accordingly, this regulation pertains to *determinations made by other agencies* and not specifically to medical opinions rendered during the pendency of a claim with another agency.

*all of the evidence* and see whether we can decide whether you are disabled based on the evidence we have." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (emphasis added). "Regardless of its source, *we will evaluate every medical opinion we receive.* Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the [factors set forth in 20 C.F.R. §§ 404.1527(d)(1)-(6), 416.927(d)(1)-(6)] in deciding the weight we give to any medical opinion." 20 C.F.R. §§ 404.1527(d), 416.927(d) (emphasis added).

While the ALJ cited to Dr. Barry's finding regarding malingering, the ALJ failed to fully discuss and weigh this opinion, which was error. See AT 21. The omission of this analysis is striking considering that Plaintiff was evaluated by Dr. Barry at the request of the Agency. Accordingly, the matter must be remanded.[6]

### 2.     Evaluation of "B" Criteria

Plaintiff argues that the ALJ improperly evaluated the "B" criteria of Listing 12.04. Dkt. No. 9 at 10. In his decision, the ALJ found that Plaintiff has a mild limitation in the area of "activities of daily living;" moderate limitations in the areas of "social functioning" and "concentration, persistence, and pace;" and no episodes of decompensation. AT 22-23.

The Court notes that in cases in which the disability claim is premised upon one or more listed impairments of appendix 1, "the Secretary should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment." Berry, 675 F.2d at 469. While a court may be able "to look to other portions of the ALJ's decision" and to "credible evidence" in finding that his determination was supported by substantial evidence, the Second Circuit has noted that "[c]ases may arise, however, in which we would be unable to fathom the ALJ's rationale in relation to

---

[6] Plaintiff also argues that the ALJ "failed to consider [Plaintiff's] cognitive deficits" as noted by Dr. Barry. Dkt. No. 9 at 17. However, the ALJ discussed Dr. Barry's findings in this regard and noted that Plaintiff's treating psychiatrist opined that Plaintiff did not have "a low IQ or reduced intellectual functioning." AT 20.

evidence in the record . . . . In such instances, we would not hesitate to remand the case for further findings or a clearer explanation for the decision." Id. (citations omitted).

In discussing the four specific areas, the ALJ cited no medical evidence and provided very little reasoning to explain his findings.  For instance, the ALJ found that Plaintiff suffers from a moderate impairment in the area of "concentration, persistence, and pace."  AT 22.  The ALJ's entire explanation consisted of the following: "Although the claimant has some limitations in this area, she has been able to pursue two worker's compensation claims."  Id.  The ALJ fails to explain how Plaintiff's ability to pursue workers' compensation claims relates to the area in question and the Court is unable to fathom the ALJ's rationale.  Accordingly, the Court finds that the ALJ failed to provide a sufficient rationale in support of the "B" criteria of Listing 12.04.  Therefore, the matter must be remanded.[7]

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the decision denying disability benefits be **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g)[8] for further proceedings consistent with the above; and it is further

---

[7] Plaintiff also argues that the ALJ "failed to apply the requirements of Social Security Ruling 85-15 which discusses the effect of nonexertional impairments such as psychiatric impairments upon an individual's residual functional capacity for work." Dkt. No. 9 at 18. However, this Ruling relates to evaluating cases involving solely nonexertional impairments. Social Security Ruling 85-15, 1985 WL 56857, at *2 (S.S.A. 1985).  Here, Plaintiff alleges both exertional and nonexertional limitations.  See AT 74.

[8] Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**ORDERED** that pursuant to General Order # 32, the parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been **RESCINDED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

DATED:    August 13, 2008
          Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge